CENTRAL VICTORIA, Plaintiff and Appellee, *v.* JUAN SUÁREZ-PÉREZ, Defendant and Appellant.

No. 3732. Argued March 26, 1926.—Decided June 15, 1926.

*Henry G. Molina* and *Leopoldo Feliú* for the appellant. *Cayetano Coll Cuchí* and *G. Cruzado Silva* for the appellee.

MR. JUSTICE HUTCHISON delivered the opinion of the court.

A temporary restraining order was converted into an

injunction *pendente lite* upon facts and for reasons stated by the district judge, as follows:

"The complaint in this case alleges the existence of a contract of lease executed in September, 1921, for the term of ten years and at an annual rent of $25, the full term of which was paid in advance. Further, that the parties, when executing the lease, intended to preserve a servitude which the plaintiff had had on the leased premises for more than fifteen years in the form of a switch where plaintiff's cane is loaded into the trains for transportation to its mill.

"The object of the action is to have the court declare the existence of a right to a switch for plaintiff's trains and of a right of way to the switch; that the defendant be compelled to respect plaintiff's right to use the switch and the way leading thereto during the term of the contract, as well as the free entrance thereby of plaintiff's cars, and that the defendant be prohibited to prevent or obstruct, by fences or otherwise, the exercise of those rights. Besides, the plaintiff claims $1,000 for the damages which it alleges have been caused to it by the defendant.

"On February 26th last, the court issued a prohibitory order to the defendant, and the hearing of plaintiff's petition for an injunction *pendente lite* was had.

"The defendant answered the complaint and the order to show cause, objecting to plaintiff's pretensions.

"After the hearing was had and the evidence produced, the parties filed written briefs which have been carefully considered by the court. The only question now pending decision is whether a writ of injunction *pendente lite* lies.

"At the hearing plaintiff offered in evidence deed No. 47 of September 8, 1921, which is a contract of lease executed by Manuel Falú, defendant's predecessor in title, in favor of the civil partnership 'Central Victoria, Ltd.,' from whom the plaintiff derives its title. The existence of the lease in the terms alleged in the complaint appears from the deed, in the fourth clause of which is, as well, the following stipulation:

" 'It is expressly agreed between the contracting parties herein that this lease comprises not only the portion of land on which the said switch in kilometer No. 15 of the American Railroad track is situated with its two loading places on both sides of the switch, but it also includes the right to use the road which, leading from the public highway that leads from Río Piedras to Carolina, leads to the lagoon and from there to the switch.'

"It also appears that the amount of the rental during the term of the lease, that is, ten years, was paid in full when the deed was executed.

"That contract is still in force, as there is nothing in the record that suggests its termination. Defendant's distinguished counsel, as appears from his brief, considers the lease as terminated from the moment the defendant acquired the property, on July 8, 1924, because it was not recorded in the registry. No doubt he had in mind the right which section 1474 of the Civil Code gives to the purchaser of leased property. But one thing is the right of the purchaser and another its exercise. There is no averment or evidence showing that the purchaser exercised such right and, therefore, we must presume that the contract on which the plaintiff bases its claim is still in force. Such being the case, and as the complaint states a good cause of action, there is a *status quo* that must be protected by means of an order or writ as the one prayed for, which would lie not only under the law of *injunction*, but also under the provisions of section 2 of the law to secure the effectiveness of judgments."

Among other matters mentioned in the answer to the rule to show cause and as part thereof, defendant referred to and adopted the averments contained in his answer to the complaint in the principal action. From the verified pleading so relied upon we take the following extract:

"12. The defendant denies that soon after he purchased the property, or at any time, he began to annoy the plaintiff or to threaten it to close said road with a fence, but admits that some time after he had acquired the property he was informed by the plaintiff (without showing to him a copy of the same) that it had a contract of lease in connection with the track or switch, to which the defendant replied that he knew nothing of said contract and that he intended to fence the whole property. And the defendant further alleges that on October 24, 1924, he proceeded to fence this property, and had it fenced, and not along the said road only, that is, along the boundary line with the highway between Río Piedras and Carolina, of all of which the plaintiff was informed at the time said fence was being built. The defendant alleges further that all the threats in this case have come from the plaintiff, who has threatened the defendant that if he did not remove the fence it would destroy it because the services of plaintiff's lawyer had been contracted by the year and it would not mind being in court all the time that should be necessary, obliging defendant to spend money.

"13. The defendant admits that some time in December, 1924, the. plaintiff requested the defendant to remove said fence, which defendant refused to do, but he denies that as a consequence of such refusal the plaintiff has suffered damages in the sum of $1,000, or in any other amount.

"14. That in September, 1924, the plaintiff was informed that the property hereinbefore described belonged to the defendant who had acquired the same free from any encumbrance or lien, and further, that defendant intended to have the property fenced and to prevent anybody from interfering with his possession and enjoyment of the same. That on October 24, 1924, he started to have it fenced and did have it fenced along its west side where it is bounded by the road that leads from the highway to the San José Lagoon, which fencing was finished in the first days of November, 1924. That the defendant (*sic*) made no opposition to the construction of such fence, nor did it make any effort to have it removed until it filed the present complaint in this court on February 26, 1925, of which complaint and proceedings the defendant was notified on March 3, 1925. That due to the negligence and laches of the plaintiff the court should not grant the prayer for an injunction *pendente lite.*"

The court below seems to have overlooked the announcement by defendant of his intention to fence the property acquired by him upon being informed of the existence of the lease, and notwithstanding such information furnished by plaintiff. Such announcement made upon receiving notice of plaintiff's claim as lessee of the former owner and in response thereto, supplemented if need be by the subsequent building of the fence and refusal to remove the same, was, we think, a reasonably clear indication of defendant's election not to accept and abide by the terms and conditions of the lease.

It is true that plaintiff alleges in its complaint that the primary if not the sole purpose and intention of the parties to the agreement of lease was to protect and preserve plaintiff's servitude of a right of way which in the form of a switch had existed for a period of fifteen years prior to the execution of the contract of lease. But the only evidence of any such intention or purpose introduced at the hearing on the rule to show

cause was the writing last above mentioned. That document makes no mention of any pre-existing "servitude," although it does refer to the leased premises as being occupied by a switch and there is no intimation of any intention on the part of the lessee to use the property in question for any purpose other than that of receiving for transportation to its mill the cane produced in the vicinity of the switch. The lease also includes the right to use a road leading from the public highway to and across the railroad at a point near the said switch and a right of way over the lands of lessor lying between the said road and the switch. But there is no evidence of any purpose or intention to recognize a pre-existing servitude or to create or establish any servitude or any privilege or right of any kind for a longer period than that specified as the term of the lease. Nor is there any indication of any purpose or intention to convert the agreement of lease into a contract of a different character or to include therein any stipulation, obligation or right inconsistent with the nature of a lease or of a sort that would survive the extinguishment of the leasehold by reason of a conveyance of the leased premises and refusal on the part of the purchaser to step into the shoes of the lessor.

Such an agreement of lease, without more, is not enough to sustain a mandatory injunction pending a final determination of plaintiff's claim to a servitude of a right of way over the leased premises.

This case was submitted on appeal more than a year after the filing of the complaint in the principal action. If the question involved be not purely academic, it should have become so and it is perhaps safe to assume that the interlocutory injunction has already outlived its usefulness.

The order appealed from must be reversed.